**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LAWRENCE E. BURTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1678** |
| **KEITH COOLEY, WARDEN** | **SECTION "S" (4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I. Factual and Procedural Background

The petitioner, Lawrence E. Burton, ("Burton"), is a convicted inmate incarcerated in the Allen Correctional Center in Kinder, Louisiana.[2] On June 2, 2008, Burton, along with his co-defendant, Samuel Bertholotte, ("Bertholotte"), was charged by felony bill of information with two counts: (1) armed robbery with a firearm and (2) attempted armed robbery with a firearm.[3] Burton and Bertholotte entered pleas of not guilty to the charges on June 10, 2008.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 5, Bill of Information, 6/2/08.

[4]St. Rec. Vol. 1 of 5, Minute Entry, 6/10/08.

On March 16, 2009, jury selection began.[5] During voir dire, Burton and Bertholotte each exercised all of their peremptory challenges, as did the State.[6] The next day, however, Bertholotte pled guilty, and only Burton proceeded to trial, on the single charge of armed robbery with a firearm.[7] Bertholette received a sentence of two years for each charge, to run concurrently.[8]

The record reflects that on April 11, 2008, Nicholas Tassin and his construction crew were working for a builder at a house on New Orleans Street.[9] Tassin was in the front of the house when he saw an African-American man with a gun approach one of his workers who was getting out of a van. The worker took off running. Another African-American man approached Tassin. The man entered the house, put a gun to Tassin's head, and demanded that Tassin give him his money or he would "blow his brains out." Tassin gave him his wallet, check book, utility knife, cell phone, and cash. Both men then left in a gold, four-door Buick bearing license plate number TYR009. Tassin ran back inside and told someone to call 911. Paul Pervis made the call to 911, and described the assailant as having braids/dreadlocks and was wearing black and white clothing and a ball cap. He also informed 911 of the license plate number of the Buick.

Meanwhile, Tassin went back outside where he was able to flag down a passing police vehicle. He was speaking to the officer when the officer received a call that two subjects had been apprehended.

---

[5]St. Rec. Vol. 1 of 5, Minute Entry, 3/16/09.

[6]*Id.*

[7]St. Rec. Vol. 1 of 5, Minute Entry, 3/17/09.

[8]*Id.*

[9]The facts were taken from the opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Burton (Burton I)*, 23 So. 3d 1073 (La. App. 4th Cir. 2010); St. Rec. Vol. 2 of 5, 4th Cir. Opinion, 2009-KA-0826, 7/14/10.

Detective Mary Colon responded to the dispatch about the robbery. Military police also heard the dispatch and notified Mary Colon that they had spotted the vehicle, which then struck a pole and building on the corner of Urquhart and St. Roch streets. The two men fled on foot, and the military police immediately apprehended one of them trying to climb a fence. Detective Colon arrived as they were apprehending him. The second man was apprehended about an hour later with the help of a canine unit.

Tassin was taken to the scene where he identified the defendant, Burton, as his assailant. He was the man who was apprehended by the military police while trying to climb the fence. Tassin's belongings were strewn around the area near the fence and were recovered by the police along with Burton's ball cap. However, the gun used by Burton was not recovered. The Buick was registered in Burton's name.

On March 17, 2009, the jury found Burton guilty of armed robbery with a firearm, pursuant to La. Rev. Stat. § 14:64.3.[10] On March 30, 2009, the Trial Court sentenced Burton to a sentence of thirty years at hard labor.[11]

On direct appeal, Burton's counsel asserted four errors: (1) the Trial Court erred by failing to rule on his motion for new trial prior to imposing the sentence; (2) the Trial Court abused its discretion by denying his challenge for cause of a juror; (3) the Trial Court erred by denying his motion for mistrial after his codefendant's post-voir dire guilty plea; and (4) the sentence imposed was excessive.

On July 14, 2010, the Louisiana Fourth Circuit Court of Appeal affirmed Burton's conviction, but vacated the sentence and remanded the case to the Trial Court for re-sentencing because the Trial

---

[10]St. Rec. Vol. 1 of 5, Minute Entry, 3/17/09.

[11]St. Rec. Vol. 1 of 5, Minute Entry, 3/30/09.

Court failed to sentence him to a mandatory additional five years imprisonment to La. Rev. Stat. § 14:64.3.[12] The sentence was therefore illegally lenient. The Fourth Circuit also found that the district court failed to restrict parole eligibility as required by La. Rev. Stat. § 14:64. However, that aspect of the sentence was self-correcting, and did not need require remand.

In reviewing the assignments of error that Burton had raised, the Fourth Circuit found that the first error had been corrected at a hearing, as the motion for a new trial had eventually been ruled on after the Fourth Circuit directed the Trial Court to do so. Furthermore, because the sentence already needed to be vacated, any error arising from the failure to rule on this motion was harmless.

The Fourth Circuit found no abuse of discretion in the Trial Court's denial of the challenge for cause. Similarly, the Court also rejected Burton's claim regarding the Trial Court's alleged error in failing to grant a mistrial after his codefendant pled guilty. Finally, the Trial Court pretermitted ruling on the last assignment of error alleging that his sentence was excessive, because it was unclear which part of his sentence, if any, was imposed pursuant to the firearm enhancement provisions, and in any case, it was vacated and remanded for resentencing.

Burton sought review of the Fourth Circuit's ruling in the Supreme Court.[13] The Louisiana Supreme Court denied the writ without reasons on February 11, 2011.[14] Burton did not seek further review in the United States Supreme Court.

As a result of the Fourth Circuit's ruling, on April 18, 2012, the Trial Court resentenced Burton to a term of thirty years at hard labor, and an additional five years at hard labor without the benefit of

---

[12]*Burton I*, 23 So. 3d 1073 (La. App. 4th Cir. 2010); St. Rec. Vol. 2 of 5, 4th Cir. Opinion, 2009-KA-0826, 7/14/10.

[13]St. Rec. Vol. 2 of 5, La. S. Ct. Writ. App., 2010-KO-1906.

[14]St. Rec. Vol. 2 of 5, La. S. Ct. Order, 2010-KO-1906, 2/11/11.

probation, parole, or suspension of sentence for the firearm enhancement.[15] Burton again appealed his conviction and sentence, asserting two assignments of error: (1) the Trial Court erred in increasing the sentence and imposing a constitutionally excessive sentence; and (2) the Trial Court lacked subject matter jurisdiction.[16] On May 8, 2013, the Fourth Circuit found his assignments of error to be without merit and affirmed Burton's conviction and sentence.[17]

Burton sought review of the judgment in the Louisiana Supreme Court, reasserting his claim that the Trial Court lacked subject matter jurisdiction.[18] The Louisiana Supreme Court denied his writ without comment on November 15, 2013.[19] His conviction and sentence became final ninety (90) days later, on February 13, 2014, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On February 5, 2014, Burton executed an application for post-conviction relief and submitted it to the Trial Court, asserting that the results of DNA testing on the cap found when he was apprehended would prove by clear and convincing evidence that he was factually innocent.[20] On February 14, 2014, the Trial Court denied the application, finding his claim lacked merit, and that DNA testing could not establish his innocence, as an inconclusive or negative test would not exculpate

---

[15]St. Rec. Vol. 1 of 5, Minute Entry, 4/18/12.

[16]St. Rec. Vol. 4 of 5, Appellate Brief, 10/22/11; Supplemental Pro Se Brief, 11/13/12.

[17]*State v. Burton (Burton II)*, 116 So. 3d 863 (La. App. 4th Cir. 2013); St. Rec. Vol. 4 of 5, 4th Cir. Opinion, 2012-KA-1321, 5/8/13.

[18]St. Rec. Vol. 4 of 5, La. S. Ct. Writ. App., 2013-KO-1177, 5/20/13.

[19]St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2013-KO-1177, 11/15/13.

[20]St. Rec. Vol. 5 of 5, Application for Post-Conviction Relief, 2/5/14.

him from the facts of the crime.[21] The Fourth Circuit denied his related writ application on May 22, 2014.[22] His related writ application to the Louisiana Supreme Court was also subsequently denied without reasons on March 13, 2015.[23]

## II. **Federal Petition**

On April 22, 2015, Burton executed a federal petition for habeas corpus relief asserting the following grounds for relief: (1) denial of a fair trial when Trial Court denied his challenge for cause of a juror; (2) denial of a right to a fair trial when Trial Court denied his motion for a mistrial; and (3) the Trial Court lacked subject matter jurisdiction.[24]

The State filed a response in opposition to Burton's petition conceding timeliness and exhaustion.[25] The State argues that Burton's claims lack merit and he is not entitled to federal habeas relief. The Court will proceed to address the substance of Burton's claims.

---

[21]St. Rec. Vol. 5 of 5, Trial Court Order, 2/14/14.

[22]St. Rec. Vol. 5 of 5, 4th Cir. Order, 2014-K-0487, 5/22/14.

[23]St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2014-KH-1259, 3/13/15.

[24]Rec. Docs. Nos. 1, 1-2. Burton also filed a motion to borrow the state court record and extend his deadline for a reply after the State filed its response. *See* Rec. Doc. No. 15. The Court denied this motion insofar as he requested to borrow the state court record, and granted it in regards to extending the deadline for a reply. *See* Rec. Doc. No. 16. In his reply, Burton appears to re-urge his need for a copy of the entire state court record. *See* Rec. Doc. No. 17. Because the Court has already ruled on that issue, it is not addressed herein.

[25]Rec. Doc. No. 14. The State does point out that Burton's claim that the Trial Court did not have subject matter jurisdiction because he was essentially not charged under a valid criminal statute was ruled by the Fourth Circuit to be raised on untimely state grounds because he had failed to raise the issue in the Trial Court. However, recognizing that the Fourth Circuit also addressed the claim and dismissed it on the merits, the State finds that it "appears to be properly exhausted and may be reviewed herein on the merits." This Court agrees, and therefore simply notes that the State has conceded the exhaustion issue.

## III. Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. Hill, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, ––U.S. –––, 134 S. Ct. 1697, 1706–07 (2014) (citing *Harrington v. Richter*, ––U.S. –––, 131 S. Ct. 770, 787 (2011) and *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405–06, 412–13; *Penry v. Johnson*, 532 U.S. 782, 792–93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S.Ct. at 1706–07; *Williams*, 529 U.S. at 406–08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24–25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, ––– U.S. ––––, 131 S.Ct. 1388, 1398 (2011).

**IV. <u>Denial of Challenge for Cause of Juror</u>**

In Burton's first claim, he asserts that the Trial Court violated his right to a fair and impartial trial by denying his for-cause challenge of a juror, Ms. Ford. He argues that her inability to be impartial denied him a fair and impartial jury. This claim provides a cognizable basis for federal habeas relief. As the United States Supreme Court has stated, "[i]n essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 1642, 6 L. Ed. 2d 751 (1961). Burton claims that because he had no peremptory challenges remaining, the denial of his for cause challenge of Ms. Ford resulted in an unfair trial.

The United States Fifth Circuit has held that "refusal to grant a challenge for cause is within the discretion of the trial court, and it is does not provide a basis for habeas corpus relief unless the disqualifying fact was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial." *Sudds v. Maggio*, 696 F.2d 415, 416 (5th Cir. 1983) (citation omitted). "The standard for determining when a venire member may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). A juror is considered biased if he unequivocally states during voir dire that he cannot be fair and impartial. *Virgil v. Dretke*, 446 F.3d 598, 613 (5th Cir. 2006). When a state trial court has refused a petitioner's challenge for cause, as here, that refusal is a factual finding entitled to a presumption of correctness. *Id.* (citing *Jones v. Butler*, 864 F.2d 348, 362 (5th Cir. 1988)).

Burton asserts that the Trial Court erred in denying his challenge for cause against Ms. Ford because she was unable to be impartial. Specifically, he quotes part of the voir dire transcript, where

Ms. Ford discussed the fact that her cousin had been kidnapped and murdered some years before.[26] She expressed some hesitancy regarding serving as a juror, but did not unequivocally state that she could not be impartial.[27]

The Trial Court judge, who witnessed the voir dire first hand, found that Ms. Ford had not "said anything specific at all" to warrant her dismissal from the jury.[28] This was a factual decision, which is entitled to a presumption of correctness before this Court. The Trial Court was better situated to judge the responses of the potential jurors because the judge was present during the live proceedings. This Court cannot upend this finding, unless Burton has sufficiently rebutted the presumption of correctness.

In the last reasoned state court decision on this issue, the Fourth Circuit found that the Trial Court had not abused its broad discretion in denying the challenge for cause.[29] The Fourth Circuit agreed that Ms. Ford's responses were "not emphatic" and that therefore "her responses as a whole did not definitively show that she could not be impartial and render a fair verdict."

In light of the standards governing this Court's deferential review, Burton has failed to show that Ms. Ford's views would prevent or substantially impair her performance of her duties as a juror. Nor has he shown that an impartial jury rendered his trial fundamentally unfair. Burton is not entitled to federal *habeas corpus* relief on this claim.

---

[26]St. Rec. Vol. 2 of 5, Voir Dire Transcript, 3/16/09, pp. 247-51.

[27]*Id.*

[28]*Id.* at 278.

[29]*Burton I*, 23 So. 3d 1073 (La. App. 4th Cir. 2010); St. Rec. Vol. 2 of 5, 4th Cir. Opinion, 2009-KA-0826, 7/14/10.

## V. **Denial of Mistrial**

In his next claim, Burton asserts that the Trial Court erred in denying his motion for mistrial, resulting in a fundamentally unfair trial. Voir Dire was conducted in his case on March 16, 2009, when both Burton and his codefendant, Bertholotte, were being tried together on two charges–armed robbery with a firearm and attempted armed robbery with a firearm.[30] During Voir Dire, both Burton and Bertholotte each asserted all twelve of their peremptory challenges, and the State asserted twenty-four.

On the next day, March 17, 2009, Samuel Bertholotte pleaded guilty to one count of armed robbery and one count of attempted armed robbery under *North Carolina v. Alford*.[31] Burton moved for a mistrial and was denied. The State then severed the counts and informed the trial court that they would proceed to trial with Burton on only one count–armed robbery with a firearm. Burton asserts that Bertholotte's absence from trial, and the jury's alleged knowledge of the dropped second count prejudiced the jury, resulting in a fundamentally unfair trial.

The Fourth Circuit rejected this claim in the state courts' last reasoned decision on the issue.[32] The Court noted that the first basis on which the claim relied– namely that the codefendant pleaded guilty–was rejected by the Trial Court because the codefendant had entered his plea before the jury re-entered. Indeed, the Fourth Circuit found that "there is no legal basis for granting a motion for mistrial when a codefendant pleads guilty prior to the jury being sworn and evidence heard." Furthermore, the Trial Court did not inform the jury of the reasons for the codefendant's exit from the

---

[30]St. Rec. Vol. 2 of 5, Voir Dire Transcript, 3/16/09.

[31]St. Rec. Vol. 1 of 5, Minute Entry, 3/17/09.

[32]*Burton I*, 23 So. 3d 1073 (La. App. 4th Cir. 2010); St. Rec. Vol. 2 of 5, 4th Cir. Opinion, 2009-KA-0826, 7/14/10.

case, and simply instructed the jury that only Burton was on trial. Thus, the Fourth Circuit found that this ground for challenging the denial of a mistrial lacked merit, due to the wide discretion of the Trial Court in granting a mistrial. The Fourth Circuit further held that Burton had not preserved his second basis for this claim, noting that after the State chose to proceed to trial on one count only, counsel did not move for a mistrial.

It is well established that federal habeas corpus courts do not sit to review errors of state law, but rather only federal constitutional violations are sufficient to warrant habeas corpus relief. *See Swarthout v. Cooke*, ––– U.S. ––––, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (recognizing that federal habeas relief will not issue for errors of state law); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (holding a federal court may not issue the writ on the basis of a perceived error of state law). Thus, to the extent that the denial of a mistrial was improper under Louisiana law, that claim is not cognizable before this Court.

Indeed, "[t]he trial court's denial of [Burton]'s motion for a mistrial justifies federal habeas corpus relief only if it was error . . . so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (internal quotation marks omitted) (citing *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988). To obtain relief, the petitioner must show that the state trial court's error, if any, had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). The petitioner must show that "there is more than a mere reasonable possibility that [the error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996) (emphasis omitted). In order to satisfy due

process, Burton's trial must have been fair; it need not have been perfect. *See United States v. Hasting*, 461 U.S. 499, 508 (1983).

Burton argues that the "mysterious" disappearance of his codefendant affected the jury because the "admission of guilt by a codefendant would taint the jury towards guilt of the remaining defendant." However, the jury was never informed that Burton's codefendant pleaded guilty, and were simply instructed that only one defendant was going to be tried. Absent extraordinary circumstances, jurors are presumed to follow the instructions given them by the court. *See Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987).

Finally, Burton asserts that prejudice was indicated when a juror inquired about a second case at the conclusion of trial. However, as the Fourth Circuit noted in its opinion, the juror was merely inquiring about the extent of her continuing duty as a juror–not indicating any bias as to the proceeding.

Under these circumstances, there is no basis on this record to conclude that Bertholotte's exit from the trial, and the State's choice to proceed against Burton on only one count rendered Burton's trial "fundamentally unfair." Accordingly, Burton cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law as established by the United States Supreme Court. Burton is not entitled to federal habeas corpus relief on this claim.

## VI. Lack of Subject Matter Jurisdiction

In his final claim, Burton asserts that the Trial Court did not have subject matter jurisdiction because the statute under which he was tried and convicted, La Rev. Stat. § 14:64.3[33], is not a substantive criminal statute and therefore he was improperly convicted of a "non-offense." Burton argues that the statute only provides for an enhanced sentence based on the use of a firearm during the commission of an armed robbery. The actual elements of robbery are set forth in La. Rev. Stat. § 14:64.[34] Therefore, Burton contends that the bill of information failed to charge an offense, and the Trial Court therefore lacked jurisdiction to proceed to trial on the charge.

In the Fifth Circuit, "the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985) (quotation marks and citations omitted). In fact, such a claim is valid for habeas corpus purposes "only when the indictment is so defective that *under no circumstances* could a valid state conviction result facts provable thereunder" and that can only be determined by looking at the law of the state that issued the indictment. *Id.* (emphasis added). Thus, when the issue is "squarely presented" to the highest court of the state on appeal, and that court held that there was jurisdiction in the Trial Court, federal habeas corpus courts shall not consider the claim. *Id.*

---

[33]La. Rev. Stat. § 14:64.3(A) provides:

When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.

[34]La. Rev. Stat. § 14:64 provides:

A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.

Here, the Fourth Circuit considered the claim,[35] though not the Louisiana Supreme Court, which denied relief without comment.[36] Thus, this Court is not necessarily foreclosed from considering this claim. However, even if review is not precluded, this Court finds that the indicment was sufficient under Louisiana law, for the reasons set forth by the Fourth Circuit in the last reasoned state court decision on the issue. In its opinion, the Fourth Circuit explained:

> In the matter *sub judice*, the language of the bill of information specifically accuses Burton of having robbed the victim while armed with a gun. Louisiana Rev. Stat. 14:64 defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." Additionally, La.Rev.Stat. 14:64.3 pertains to armed robberies that are committed with the use of a firearm. Comparing the bill of information to the statutes at issue, we find that Burton was sufficiently notified by the wording of the bill of information of the crimes with which he was being charged as the bill of information details that Burton committed a robbery while armed with a firearm. Thus, it is clear that Burton was charged with an "offense" over which the trial court, as a state court of Louisiana, had "subject-matter" jurisdiction.

*Burton II*, 116 So. 3d 863 (La. App. 4th Cir. 2013) (emphasis in original); St. Rec. Vol. 4 of 5, 4th Cir. Opinion, 2012-KA-1321, 5/8/13. Because Burton was clearly on notice of the charges against him, and the state courts found that the bill of information sufficient under Louisiana law, this Court will not disturb the state court's ruling. The Fourth Circuit's decision was neither contrary to, nor an unreasonable application of, federal law. Burton is not entitled to federal habeas corpus relief on this claim.

---

[35]*Burton II*, 116 So. 3d 863 (La. App. 4th Cir. 2013); St. Rec. Vol. 4 of 5, 4th Cir. Opinion, 2012-KA-1321, 5/8/13.

[36]St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2013-KO-1177, 11/15/13.

## VII. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Burton's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[37]

New Orleans, Louisiana, this 20th day of November, 2015.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

[37] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.